**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AGNES TJANDRA, individually, as mother of her minor daughter V.K., and as Personal Representative of the Estate of DARYANTO TJHANG;<br><br>DEDDY RIYANTO, individually and as Personal Representative of the Estate of VERA JUNITA, and TJHIN LIE TJHIANG & DJAKARIA SAMSU, each individually;<br><br>DJAP FATIMAH, individually and as Personal Representative of the Estates of ADONIA MAGDIEL BONGKAL, MICHELLE VERGINA, and MATTHEW DARRYL BONGKAL, decedents;<br><br>DYAH MAULIDA, individually, and as Personal Representative of the Estate of JOYO NUROSO, and ANNA ROCHMAWATI, individually, and as mother of her minor children A.M.H., I.F., F.M.T, and SEPTIANA NURUL HIDAYAH, individually;<br><br>ENI SITI NURAENI, individually, and as Personal Representative of the Estate of AKHMAD ENDANG ROKHMANA, and VITA TYANA VIRISTA and MUHAMMAD RIZKI FAUZY, each individually;<br><br>FRISCILLA HARLIAN TONI, individually, and as mother of her minor son W.A.U., and as Personal Representative of the Estate of VERIAN UTAMA; and BAVO UTAMA and DJOENG OI KHIM, each individually;<br><br>IDEZ PUTRI VON ENDE, individually, and as Personal Representative of the Estate of | **Case No. ____________**<br><br>**Jury Trial Demanded** |

| | |
|---|---|
| TRIANINGSIH PUTRI VAN ENDE, and DWI SARI, individually;<br><br>IFRAN SUNARDI K, individually, as father of his minor children V.S.K., and V.L.K, and as Personal Representative of the Estate of MONNI, and VINCENT LIONEL, individually;<br><br>ILONA, individually, as mother of her minor children D.R., A.A., A.A.R., and R.B.R., and as Personal Representative of the Estate of REO YUMITRO, and ROSLINAR and YUSMITRA, each individually;<br><br>IMAS HENIYATI, individually, as mother of her minor daughter S.R., and as Personal Representative of the Estate of BAMBANG ROZALI USMAN, and MAULANA USMAN and FARAH FATIMAH, each individually;<br><br>LATIEF NURBANA, individually, and as Personal Representative of the Estate of MUHAMMAD LUTHFI NURRAMDHANI, and KARLINA SETIAPUTRI, individually and as mother of her minor son M.A.K.N., and YETI EKA SUMIATI, individually;<br><br>LINDAWATI, as Personal Representative of the Estate of YUNITA, and TJU LIAN SIN and TJHIN AI NIT, each individually;<br><br>MUTOHAROH, individually, as mother of her minor children N.K., H.K, and T.K., and as Personal Representative of the Estate of ABDUL KHAER;<br><br>NARULITA SARI, individually, as mother of her minor children K.D.A. and K.R.A., and as Personal Representative of the Estate of TESA KAUSAR, and USTIANI individually;<br><br>NOVIA, individually, and as mother of her minor children, S.L., S.R.A., M.D., P.I.B., | |

and E.R., and as Personal Representative of the Estate of DOLAR;

PRASETYO WAHYU ADI, individually, and as Personal Representative of the Estate of MARIA ULFAH, and as father of his minor child L.H.R., and UMMAH, individually;

RIANDY CHRISTIAN SAPUTRA, individually, and as Personal Representative of the Estate of FIFI HAJANTO; and as father of A.W. and K.A., and PENDY HAJANTO, and NG NGIAM SU, each individually;

RUKENI, individually, as mother of her minor children N.A.M. and N.K.R.Y., and as Personal Representative of the Estate of NICKO YOGHA MARENTA UTAMA;

SISFIARSIH, individually, as Personal Representative of the Estate of SASTIARTA, and T. MALAKA, HARYANA, each individually;

SUMIATI, individually, as mother of her minor son M.F.A., and as Personal Representative of the Estate of MOHAMAD FADILLAH, and MUHAMMAD FAHMI ABDUL AZIZ, and ROENAH, each individually;

TURHINDAYANI, individually, as mother of her minor children R.A.A.M., A.R.Z.N, and A.R.M, and as Personal Representative of the Estate of AHMAD MUGHNI, and SUSNAWATI, individually; and,

VINA OCTA SITINDAON, individually, and as Personal Representative of the Estate of HARDY; and as mother of A.S.H.,

Plaintiffs,

| vs.<br><br>The Boeing Company, a corporation,<br><br>Defendant. | |
|---|---|

**COMPLAINT**

Come now plaintiffs, through their lawyers at ***HERRMANN LAW GROUP,*** to allege the following complaint against defendant *The Boeing Company* (Boeing).

**I. NATURE OF ACTION**

1. Plaintiffs seek to recover damages caused by personal injuries and wrongful death of plaintiffs' decedents while passengers onboard Lion Air flight JT 610 that crashed in the Java Sea, near Karawang, West Java, Indonesia on October 29, 2018.

**II. JURISDICTION & VENUE**

2. Plaintiffs are all citizens and residents of Indonesia.

3. More than 75 persons died in the crash of Lion Air flight JT610, all in one location.

4. Defendant Boeing is present, doing substantial business, and maintains its headquarters within the Northern District of Illinois, specifically including Cook County.

5. Accordingly, this Court has jurisdiction over the subject matter of this litigation and the parties in this action pursuant to *Multiparty, multiforum jurisdiction,* 28 U.S.C. §1369 and *Federal question*, 28 U.S.C. §1331.

6. Venue is proper in this Northern District of Illinois pursuant to *Venue generally,* 28 U.S.C. §1391.

## III. PARTIES

7. Plaintiff Agnes Tjandra is the widow of Decedent Daryanto Tjhang, mother of their minor daughter V.K., and Personal Representative of her Decedent's Estate.

8. Plaintiff Deddy Riyanto is the brother of Decedent Vera Junita and the Personal Representative of his Decedent's Estate. Djakaria Samsu is the l father and Tjhin Lie Tjhiang is the mother of the Decedent.

9. Plaintiff Djap Fatimah is the widow of Decedent Adonia Magdiel Bongkal, mother of Decedent Matthew Darryl Bongkal and of Decedent Michelle Vergina, and Personal Representative of all three of her Decedents' Estates.

10. Plaintiff Dyah Maulida is the niece of Decedent Joyo Nuroso, and the Personal Representative of her Decedent's Estate. Anna Rochmawati is the widow of Decedent and mother of their minor children A.M.H., I.F., and F.M.T. Septiana Nurul Hidayah is their adult child.

11. Plaintiff Eni Siti Nuraeni is the widow of Decedent Akhmad Endang Rokhmana and Personal Representative of her Decedent's Estate. Vita Tyana Virista and Muhammad Rizki Fauzy are adult children of their Decedent.

12. Plaintiff Friscilla Harlian Toni is the widow of Decedent Verian Utama, mother of their minor son W.A.U., and the Personal Representative of her Decedent's Estate. Bavo Utama is the father and Djoeng Oi Khim is the mother of their Decedent.

13. Plaintiff Idez Putri Von Ende is an sister of Decedent Trianingsih Putri Van Ende and Personal Representative of her Decedent's Estate. Dwi Sari is another adult sister of her Decedent. The Decedent's parents are deceased.

14. Plaintiff Irfan Sunardi K is the widower of Decedent Monni, father of their minor children, V.S.K. and V.L.K. Varrennt Lionel Kusnadi, and

Personal Representative of his Decedent's Estate. Plaintiff Vincent Lionel is Decedent's adult son.

15. Plaintiff Ilona is the widow of Decedent Reo Yumitro, mother of their four minor children, D.R., A.A., A.A.R., and R.B.R, and Personal Representative of her Decedent's Estate. Roslinar is the father and Yusmitra the mother of Decedent.

16. Plaintiff Imas Heniyati is the widow of Decedent Bambang Rozali Usman, mother of their minor daughter S.R., and the Personal Representative of her Decedent's Estate. Maulana Usman and Farah Fatimah are adult children of Decedent.

17. Plaintiff Latief Nurbana is the father of Decedent Muhammad Luthfi and the Personal Representative of his Decedent's Estate. Karlina Setiaputri is the widow of Decedent, and mother of their minor son M.A.K.L. Yeti Eka Sumiati is the mother of Decedent.

18. Plaintiff Lindawati is the sister of Decedent Yunita and the Personal Representative of her Decedent's Estate. Tju Lian Sin is the father and Tjhin Ai Nit is the father of Decedent.

19. Plaintiff Mutoharoh is the widow of Decedent Abdul Khaer, mother of their minor daughters, N.K., H.K., and T.K., and Personal Representative of her Decedent's Estate.

20. Plaintiff Narulita Sari is the widow of Decedent Tesa Kausar, mother of their minor daughter K.D.A. and minor son K.R.A., and Personal Representative of her Decedent's Estate. Ustiani is Decedent's mother.

21. Plaintiff Novia is the widow of Dolar, mother of their five minor children, S.L., S.R.A., M.D., P.I.B., and E.R., and the Personal Representative of her Decedent's Estate.

22. Plaintiff Prasetyo Wahyu Adi is the widower of Decedent Maria Ulfah, father of their minor son L.H.R., and the Personal Representative of his Decedent's Estate. Ummah is the mother of Decedent.

23. Plaintiff Riandy Christian Saputra is the widower of Decedent Fifi Hajanto, father of their minor daughter K.A., and the Personal Representative of his Decedent's Estate. Anthony William is the adult child of Decedent. Pendy Hajanto is the father and Ng Ngiam Su the mother of their Decedent.

24. Plaintiff Rukeni is the widow of Decedent Nicko Yogha Marenta Utama, and mother of their minor daughters N.A.M., and N.K.R.Y., and the Personal Representative of her Decedent's Estate.

25. Plaintiff Sisfiarsih is the sister of Decedent Sastiarta, and Personal Representative of her Decedent's Estate. T. Malaka is the father and Haryana the mother of their Decedent.

26. Plaintiff Sumiati is the widow of Decedent Mohamad Fadillah, mother of their minor son M.F.A, and Personal Representative of her Decedent's Estate. Muhammad Fahmi Abdul Aziz is Decedent's adult son. Roenah is mother of Decedent.

27. Plaintiff Turhindayani is the widow of Decedent Ahmad Mughni, and mother of their minor daughters R.A.A.M, A.R.Z.M., and minor son A.R.M., and the Personal Representative of her Decedent's estate. Plaintiff Susnawati is mother of Decedent.

28. Plaintiff Vina Octa Sitindaon is the widow of Decedent Hardy, the mother of their minor daughter A.S.H., and the Personal Representative of her Decedent's estate.

29. Defendant the Boeing Company (Boeing) is a corporation organized under the laws of the State of Delaware and present and doing business within the Northern District of Illinois.

## IV. SYNOPSIS

30. The flight control system on the new subject Boeing 737-8 MAX failed, causing the plane to crash into the sea, killing everyone onboard.

31. Driven by market competition, defendant Boeing designed and developed this new and allegedly more efficient 737-8 MAX. Boeing managed to secure Federal Aviation Administration (FAA) approval of a relatively inexpensive, minimal pilot training program required to learn to fly this new version of its most popular model. Boeing even bragged on its website that airlines purchasing a fleet of these planes would save "millions of dollars … because of the commonality with the Next-Generation 737."

32. However, this new 737 MAX was modified from previous versions of the 737 to include bigger more powerful engines that had to be relocated forward and somewhat higher than their previous placement. This caused a significant alteration in the plane's center of balance that had the destabilizing effect of raising the pitch of the plane, which in turn increased the risk of a stall. To counter the problem, Boeing developed a new computer program termed the Maneuvering Characteristics Augmentation System (MCAS). This entirely new program was designed to automatically compensate for the destabilizing, pitching effect the new placement of larger engines had on this latest edition of the 737. MCAS automatically forces the nose of the plane downward whenever it senses the plane's angle of attack (AoA) was nearing risk of a stall. No redundant or fail-safe features were built into the MCAS program.

33. To minimize cost of training, Boeing intentionally omitted any reference whatsoever in its Aircraft Flight Manual (AFM) concerning its new MCAS. Pilots were not made aware of even the existence of the MCAS. Nothing notified them when it turned on. Attempts by pilots to reclaim manual control by means of the yoke did not shut off the MCAS. It would continue to

force the nose down, Pilots were not given any warning or instruction on how to respond to such an emergency.

34. FAA superiors colluded with Boeing personnel to pressure subordinate technical experts to delegate increasingly more authority to Boeing agents to expedite the process, to approve faulty safety analysis, and flight crew operation manuals (FCOM) containing no mention of the MCAS. No warnings, no instructions, no acknowledgement of even its existence.

35. In this tragic case, when the flight control system failed, erroneous information automatically activated the MCAS, forcing the plane to repeatedly dive downward towards the sea below. Tragically, the pilots were unprepared to respond. Desperate efforts proved futile. This crash was the result.

## V. FACTS

36. On or about August 15, 2018, Boeing delivered to PT Lion Mentari Airlines (Lion Air) a brand-new airliner model 737-8 MAX registered PK-LQP.

37. By way of background, in June of 2012, Boeing applied to the FAA to amend its 737 certificate to include a new model 737-8 MAX. Boeing represented that no modifications from previous 737 models required a new certificate.

38. One significant modification was the inclusion of more powerful engines with larger turbofans that required the engines to be moved further forward and somewhat upward with a longer nose gear strut to accommodate these bigger engines. This alteration of the plane's center of gravity had a longitudinal destabilizing effect on the aircraft tending to raise the nose of the plane.

39. To compensate for this increase in instability, Boeing designed an entirely new program termed Maneuvering Characteristics Augmentation System (MCAS). This program was fed information from AoA sensors. When

the angle reads too high, risking a stall, the MCAS—uncommanded—automatically kicks in, utilizing the stabilizers to force the nose of the plane downward.

40. Facing stiff market competition, Boeing strove to minimize the need for expensive additional training. Boeing advertises on its website: *"Because of the 737's popularity with airlines everywhere around the world, integrating the new 737 MAX is an easy proposition. As you build your 737 MAX fleet, millions of dollars will be saved because of its commonality with the Next-Generation 737 …"*

41. Boeing went so far as to conceal from pilots even the existence of the MCAS. No warnings, no instructions or evenacknowledgement of the MCAS were included in the AFM or the FCOM Boeing issued with this 737-8 MAX. Worse, when the MCAS kicks in, there is no notification to pilots. Thus, when the MCAS automatically activated, pilots were left to guess as to what was happening to the plane's flight control system. Adding to the pilot's confusion was the fact that in older 737 models, the only automatic pitch trim system—the entirely different Speed Trim System (STS) would shut off when the pilots pulled back on the yoke, returning manual control of the aircraft to the pilots. This was not so under the new MCAS. It would ignore the pilot's attempts to reclaim manual control of the aircraft, automatically retriggering itself but, as previously noted, the flight manual contained nary a word of warning or instructions for the pilots.

42. Nonetheless, on October 29, 2018 the subject aircraft registered PK-LQP departed Jakarta on Lion Air scheduled domestic flight JT 610 for Pangkal, Pinang, Indonesia at 23:20 UTC with 8 crew and 181 passengers onboard.

43. The Digital Flight Data Recorder (DFDR) revealed that instrumentation on the aircraft malfunctioned virtually immediately. There was

a difference between the left and right AoA sensors of about 20° and the stick shaker was activated. Less than 2 minutes into the flight, one of the pilots informed the ground control that they were dealing with a "flight control" problem. At 23:22:05, when the flaps were retracted automatic nose down trim became active for 10 seconds followed by crew commanded aircraft nose up trim. The pilots' struggle with the unknown MCAS began.

44. Thereafter the pilots maintained rough control of the plane's pitch when the flaps extended back to position 5 and the auto nose down ceased. However, at 23:25:18 the flaps retracted to position 0 and again the MCAS activated nose down force that was countermanded by the flight crew manually. This struggle continued for the next approximately 6½ minutes until the catastrophic end of flight. During this period, the pilots were able to maintain a roughly level altitude.

45. However, following the pilot's last radio communication at 23:31:09, the pilots lost the struggle against the arcane MCAS. A scant 45 seconds later the plane impacted with the sea below at something like 500 mph, killing all onboard.

46. All plaintiffs' Decedents were among the victims killed in this accident.

47. Ten days post-accident, the FAA finally fulfilled its duty issuing an Emergency Airworthiness Directive (AD) ordering Boeing to correct its omissions:

> This **emergency** AD was prompted by analysis performed by the manufacturer showing that if an erroneously high single AoA sensor input is received by the flight control system, there is a potential for repeated nose-down trim commands of the horizontal stabilizer. This condition, **if not addressed,** could cause the flight crew to have difficulty controlling the airplane, and lead to excessive nose-down attitude, significant altitude loss, and **possible impact with terrain**." [Emphasis added]

The AD went on to order Boeing to modify its manual on the 737-8 MAX to include the specific warnings and instructions on procedures to respond to an erroneously triggered MCAS. Tragically, the FAA action came all too late for the 189 victims killed in this accident.

## VI. FIRST CAUSE OF ACTION

### Strict Product Liability

48. All paragraphs above are incorporated herein by reference.

49. At the time Boeing delivered the subject airplane to Lion Air at its Seattle Delivery Center on or about August 15, 2018, Boeing knew that Lion Air was relying on Boeing's skill and/or judgment to furnish a plane that was fit for its intended purpose, that it was reasonably safe, without dangerous defects, and that adequate warnings and instructions were being provided.

50. However, the plane was not reasonably safe in construction, nor did it conform to Boeing's express warranties or the implied warranties as mandated by applicable law. Boeing's multiple failures to comply with these requirements were a proximate cause of wrongful deaths of all plaintiffs' decedents.

51. Therefore, Boeing is strictly liable to plaintiffs for all damages allowable under applicable law.

## VII. SECOND CAUSE OF ACTION

### Negligent Product Liability

52. All paragraphs above are incorporated herein by reference.

53. The subject aircraft was not reasonably safe as designed. At the time of manufacture, Boeing could have designed and manufactured additional redundant and fail-safe systems that were practical and feasible at a cost that was clearly outweighed by the deadly serious risk of harm.

54. The aircraft was likewise rendered not reasonably safe because Boeing delivered it with defective equipment and/or programming in the flight control system.

55. The aircraft was likewise rendered not reasonably safe because Boeing did not provide adequate warnings and instructions about how to respond to a failure in the flight control system such as occurred in this accident.

56. Boeing was negligent in that it failed to act in the manner of a reasonably prudent aircraft manufacturer, to appreciate the dangers, correct design flaws, install non-defective equipment, to issue adequate warnings and instructions. Such negligence was a violation of applicable law and a proximate cause of wrongful deaths of all plaintiffs' Decedents.

57. Therefore, Boeing's negligence renders it liable for all damages allowable under applicable laws.

## VII. THIRD CAUSE OF ACTION

## Pre-Death Fright & Terror

58. All paragraphs above are incorporated herein by reference.

59. The strict liability and negligence alleged in the previous causes of action were additionally proximate causes of personal injuries to all Decedents in the form of horrific Pre-Death Fright & Terror they experienced prior to impact with the sea.

60. Boeing is liable for said Pre-Death Fright & Terror each Decedent suffered because of the defendants' wrongful conduct.

## IX. FOURTH CAUSE OF ACTION

## Loss of Consortium

61. All paragraphs above are incorporated herein by reference.

62. The strict liability and negligence alleged in the previous causes of action were additionally proximate causes of Loss of Consortium experienced by all spouses of their respective Decedents.

63. Boeing is liable for said Loss of Consortium each of these plaintiffs have suffered as the result of the defendants' wrongful conduct.

## X. FIFTH CAUSE OF ACTION

### Willful and Wanton Misconduct

64. All paragraphs above are incorporated herein by reference.

65. The evidence is clear and convincing that well before this accident Boeing was on actual notice that the subject airplane had a defectively designed flight control system. It is equally obvious that Boeing was aware of the dangers involved prior to this accident.

66. Despite their awareness of the potentially dangerous consequences, Boeing's officers and/or managing agents deliberately failed to either cure the defect in design or to provide sufficient warnings and/or instruction and training. Said conduct was despicable and amounted to malice in the form of willful, wanton, and/or knowing disregard for safety of others.

67. Plaintiffs are entitled to recover not only compensatory damages, but also pursuant to applicable law, they are entitled to exemplary damages against Boeing.

## XI. RESERVATION OF RIGHT TO ADD FAA

68. The United States Federal Aviation Administration (FAA) bears a share of the culpability for this accident by its conduct in certifying Boeing's AFM and FCOM on this 737-8 MAX without requiring sufficient testing and data on relevant safety issues. To facilitate Boeing market pressures, superiors within the FAA pressured subordinates to delegate evermore of its regulatory authority to Boeing agents. The FAA failed to require Boeing to provide adequate warnings and instruction on the newly created MCAS. It wrongfully

approved obviously inadequate training and lack of instruction in manuals. The FAA failed to follow its own mandatory rules and protocols even after having been expressly alerted to the dangers by their subordinates and equivalent governmental authorities in Canada, European Union, and Brazil.

69. It was only after this tragic accident that the FAA ordered Boeing to correct the deficiencies in the warnings and instructions contained in Boeing's manuals. Ten days post-accident, the FAA finally fulfilled its duty issuing an Emergency Airworthiness Directive (AD) ordering Boeing to correct its omissions:

> This emergency AD was prompted by analysis performed by the manufacturer showing that if an erroneously high single AoA sensor input is received by the flight control system, there is a potential for repeated nose-down trim commands of the horizontal stabilizer. This condition, if not addressed, could cause the flight crew to have difficulty controlling the airplane, and lead to excessive nose-down attitude, significant altitude loss, and possible impact with terrain."
>
> **FAA's Determination**
>
> We are issuing this AD because we evaluated all the relevant information and determined the unsafe condition described previously is likely to exist or develop in other products of the same type design. Due to the need to correct an urgent safety of flight situation, good cause exists to make this AD effective in less than 30 days.

70. The AD went on to order Boeing to modify its manual on the 737-8 MAX to include the specific warnings and instructions on procedures to respond to an erroneously triggered MCAS. Had agents of the FAA adhered to their mandatory duties and their own protocols in the certification process, these obvious unsafe conditions that caused this tragic accident should have been addressed. Tragically, agents of the FAA effectively entered into a civil conspiracy with agents of Boeing to rush through the certification process heedless of proper safety precautions. Correct FAA action came all too late for the 189 victims killed in this accident.

71. However, plaintiffs are required to first exhaust administrative remedies pursuant to the Federal Tort Claims Act 28 U.S.C. § 1346 (FTCA) by filing claims with the U.S. Government. These plaintiffs are currently in the process of filing said claims.

72. Accordingly, plaintiffs request the right to amend this complaint to include the FAA once the FTCA claims process has been completed.

## XII. DAMAGES

73. As a proximate result of defendant Boeing's wrongful conduct, Plaintiffs have suffered all manner of both general and special damages.

74. Plaintiffs have suffered loss of love, comfort, care, companionship, guidance, society and all other forms of consortium. They have experienced grief, sorrow, and mental anguish to the extreme.

75. Just prior to their deaths Decedents experienced horrific fright and terror as the plane rocketed down to impact with the sea.

76. Plaintiffs have suffered loss of net accumulations in Decedent's estate, loss of support, and loss of services.

77. Said damages have been sustained in the past and will continue in the future.

78. The exact nature and the full extent of Plaintiffs' damages will be proven at trial.

## XIII. PRAYER FOR RELIEF

79. **WHEREFORE,** plaintiffs pray for judgment against the defendants awarding plaintiffs the following:

- Non-economic general damages;
- Economic damages;
- Exemplary damages;
- Pre-judgment and post-judgment interest;
- Actual attorneys' fees and costs incurred herein; and,

- Such other relief as the Court deems just and equitable.

## XIV. DEMAND FOR JURY TRIAL

80. Plaintiffs demand trial by jury on all issues.

Dated this 24th day of April 2019.

Lead Trial Counsel:
***HERRMANN LAW GROUP***
Attorneys for Plaintiffs

CHARLES HERRMANN (WA Bar #6173)
Pending admission *Pro Hac Vice*
505 5th Ave South, Ste. 330
Seattle, WA 98104
Email: charles@hlg.lawyer
Voice: (206) 625-9104
Fax: (206) 682-6710

***HERRMANN LAW GROUP***

*/S/ MARK E. LINDQUIST*

MARK E. LINDQUIST (WA Bar #25076)
Pending admission *Pro Hac Vice*
505 5th Ave South, Ste. 330
Seattle, WA 98104
Email: charles@hlg.lawyer
Voice: (206) 625-9104
Fax: (206) 682-6710

***HERRMANN LAW GROUP***

*/S/ ANTHONY MARSH*

ANTHONY MARSH (WA Bar #45194)
Pending admission *Pro Hac Vice*
505 5th Ave South, Ste. 330
Seattle, WA 98104
Email: charles@hlg.lawyer
Voice: (206) 625-9104
Fax: (206) 682-6710

***HERRMANN LAW GROUP***

*/S/ CRYSTAL LLOYD*

______________________________

CRYSTAL LLOYD (WA Bar #46072)
Pending admission *Pro Hac Vice*
1535 Tacoma Ave South
Tacoma, WA 98403
Email: crystal@hlg.lawyer
Voice: (253) 627-8142
Fax: (253) 627-1835

Local Counsel:
***CARMEN D. CARUSO LAW FIRM***

*/S/ CARMEN D. CARUSO*

______________________________

Carmen D. Caruso (# 6189462)
***CARMEN D. CARUSO LAW FIRM***
77 West Washington Street, Ste. 1900
Chicago, Il. 60602
Email: cdc@cdcaruso.com
Voice: (312) 626-1160
Fax: (312) 276-8646